UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80272-CIV-MARRA/HOPKINS

WHEELER'S MOVING &
STORAGE, INC., and
BENJAMIN MCTIGUE,

      Plaintiffs,

v.

MARKEL INSURANCE CO.,
VANLINER INSURANCE CO.,

      Defendants.
_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Defendant Markel Insurance Company's

Motion for Summary Judgment [DE 119], Plaintiff Wheeler's Moving & Storage, Inc.'s

Motion for Summary Judgment [DE 125], and Defendant, Markel Insurance Company's

Motion for Pre-Trial Conference or, in the Alternative, Motion to Continue Trial [DE

160]. The motions are fully briefed and ripe for review. The Court has carefully

considered the motions, responses, replies, Benjamin McTigue's ("McTigue") Notice

of Joinder with Wheeler's Moving & Storage, Inc.'s filings, the entire Court file, and is

otherwise fully advised in the premises.

## Background

This is an action for breach of contract and declaratory relief in which

Plaintiffs allege that Markel Insurance Company ("Markel") had a duty to defend

Wheeler's Moving & Storage, Inc. ("Wheeler's") in a lawsuit styled *McTigue v.*

*Wheeler's*, Case No. 50 2008 CA 018365, previously pending in Palm Beach County

(the "underlying action").  Following a trial on damages only due to Wheeler's failure

to defend itself at trial, the underlying action resulted in a verdict for Plaintiff

McTigue in the approximate amount of $1.4 million.  Wheeler's and McTigue now look

to Wheeler's commercial general liability insurer, Markel, for payment of that

judgment.

Defendant Markel moves for summary judgment asserting that it did not have a

duty to defend Wheeler's in the underlying action because (1) Wheeler's violated the

Policy's notice provisions, and (2) coverage is barred by the employer's liability

exclusionary provisions in the policy.  Plaintiff Wheeler's also moves for summary

judgment.  Wheeler's seeks summary judgment in its favor on Count III of its

Amended Complaint (Declaratory Judgment - Markel) finding that coverage exists

under the Markel policy for the claims made by McTigue in his lawsuit against

Wheeler's.  Wheeler's also seeks summary judgment in its favor regarding the

affirmative defenses asserted by Markel.

<u>Material Undisputed Facts</u>

1.      Defendant Wheeler's is a moving and storage company.

2.      Markel issued a commercial general liability policy to Wheeler's for the policy

period from August 15, 2006 to August 15, 2007.  Ex. A.  Regarding Wheeler's

duties to notify Markel of an occurrence or suit, the Policy provides as follows:

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

2

. . .

2.      Duties in The Event of Occurrence, Offense, Claim or Suit

      a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

            (1)      How, when and where the "occurrence" or offense took place;

            (2)      The names and addresses of any injured persons and witnesses; and

            (3)      The nature and location of any injury or damage arising out of the "occurrence" or offense.

      b.      If a claim is made or "suit" is brought against any insured, you must:

            (1)      Immediately record the specifics of the claim or "suit" and the date received; and

            (2)      Notify us as soon as practicable.

            You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

      c.      You and any other involved insured must:

            (1)      immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

            (2)      Authorize us to obtain records and other information;

            (3)      Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

            (4)      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to

3

the insured because of injury or damage to which this
insurance may also apply.

d.     No insured will, except at that insured's own cost, voluntarily
make a payment, assume any obligation, or incur any expense,
other than for first aid, without our consent.

Ex. A, DE 119-1 at 11 of 66.

3.     Occasionally, when a Wheeler's customer did not want certain personal

property, Wheeler's allowed an employee to keep the property and store it in

one of its trucks for a limited period of time.  Deposition of George McGee

("McGee Depo.") at 17-25; Deposition of Carl Jackson ("Jackson Depo.") at 14-

15.

4.     McTigue was an employee of Wheeler's.  Underlying action complaint, ¶ 5.

5.     On July 23, 2007, McTigue was on Wheeler's premises to remove from one of

Wheeler's trucks items received from a Wheeler's customer.  Deposition of

Benjamin McTigue ("McTigue Depo.") at 49-51.

6.     One or more other employees were also on the premises on the evening of July

23, 2007, when McTigue went to remove the items.  When McTigue entered the

truck to remove the items, an employee locked McTigue inside.

7.     When the employee refused to let McTigue out, McTigue attempted to get out

using anything he could find in the truck.  McTigue managed to make an

opening in the side of truck by ripping through plywood and sheet metal.

McTigue crawled out through the opening, but in doing so, he injured himself

4

and severely lacerated his forearm.  Ex. D, ¶ 8, Ex. E at 48.

8.      On or about January 21, 2008, McTigue filed a Petition for Benefits seeking

workers' compensation benefits as a result of the incident.  Ex. G.  The

workers' compensation carrier objected to the petition on the purported basis

that McTigue was not in the course and scope of employment at the time of his

injury.  McTigue voluntarily dismissed the workers compensation proceeding on

March 31, 2008, before there was any finding on the course or scope of his

employment.  Ex. H.

9.      When Wheeler's current owner, Spero Georgedakis ("Georgedakis") bought

Wheeler's, he chose to use a different insurance agent than the agent used by

the former owners.  This was because Georgedakis wanted to use the same

agent that had procured insurance for another one of his businesses, All My

Sons Moving & Storage.  Deposition of Spero Georgedakis ("Georgedakis

Depo.") at 17 [DE 119-10].

10.     On or about November 21, 2007, Wheeler's insurance information was sent to

All My Sons' insurance agent, Sarah Crocker, at Quarles Insurance Agency.  Ex.

J.  The information sent to Ms. Crocker included the Markel policy number and

the name of Wheeler's prior agent.  *Id*.

11.     **On or about June 18, 2008**, McTigue filed the underlying action.  Ex. K.

12.     Spero Georgedakis retained John Whittles, Esq. ("Whittles") of Richman Greer,

P.A. to defend Wheeler's.  Ex. I at 21.

5

13.    The underlying action was set for trial on the court docket beginning July 27, 2009, a little over one year after the filing of the complaint.  Ex. L.

14.    About one month before trial, on June 26, 2009, Wheeler's filed a Motion to Continue the underlying action.  The trial was reset to begin six months later, on the docket beginning February 1, 2010.  Ex. M.  The deadline for submission of trial and expert witness lists was November 20, 2009.  The pre-trial stipulation was due on December 31, 2009.  The discovery deadline was extended to January 11, 2010.  *Id.*

15.    Six days before the close of discovery, on January 5, 2010, Wheeler's again moved for a continuance of the trial arguing that a continuance was necessary because discovery had been delayed and was not yet completed.  Ex. N, ¶ 1. The deadline for submission of witness and exhibit lists and the pre-trial stipulation had already passed, and none were filed on behalf of Wheeler.  DE 119, ¶ 14 & DE 147, ¶ 14.

16.    On January 11, 2010, Whittles wrote Vanliner Insurance Company, Wheeler's commercial automobile liability insurer (not Markel) requesting, for the first time, defense and indemnity of the underlying action.[1]  Ex. O.

17.    Whittles' January 11, 2010 letter was forwarded to Markel.  **Markel received this letter, its first notice of the underlying incident and the underlying**

---

[1] *See* DE 99, Order and Opinion Granting Vanliner's Motion to Dismiss.

**action, on January 13, 2010**.  Ex. P; Deposition of Leslie Gray ("Gray Depo.")
at 21.  This was 18 months after the filing of the complaint on June 18, 2008.

18.    At the time Markel received its first notice of the claim and suit, all discovery
deadlines had passed.  Ex. M.  No witness or exhibit list had been filed on
Wheeler's behalf.  DE 119, ¶ 14 & DE 147, ¶ 14.  Mediation was scheduled to
occur in one week.

19.    Wheeler's supplemented its Motion to Continue Trial on January 12, 2010,
asserting that a continuance was especially needed because of the discovery of
Wheeler's policy with Markel.  Ex. N.  Counsel for Wheeler's averred in a
footnote in the Supplement to the Motion for Continuance that "discovery of
insurance coverage was delayed for several reasons, including: (1) lack of
record-keeping by the former owners, (2) unrelated litigation between the
current owners and former owners regarding ownership of the company, which
created a lack of cooperation between the current and former owners
regarding the facts of this case and, most importantly, (3) undersigned counsel
was told in error by Wheeler's insurance agency that Wheeler's did not have
general liability coverage at the time of the incident.  Insurance coverage was
discovered only by happenstance in reviewing the name of a specific insurance
agent mentioned in a deposition."  Ex. N, DE 119-15.  The motion to continue,
made just weeks before trial and 18 months after the case was filed, was
denied.

20.  On January 19, 2010, Markel denied coverage based on late notice and on the policy's auto exclusion.  Ex. P.

21.  On January 20, 2010, the underlying trial court permitted Whittles to withdraw as Wheeler's counsel and Paul Burkhart, P.L., was substituted as counsel. Ex. Q

22.  Also on January 20, 2010, the underlying action went to mediation with Mr. Burkhart's associate, Hector Rivera, attending on behalf of Wheeler's.  Ex. R.

23.  Three weeks later, on or about February 4, 2010, Mr. Burkhart's firm also moved to withdraw notwithstanding that the trial docket had already begun on February 1, 2010.  Ex. M and S.  On February 24, 2010, the trial judge allowed Mr. Burkhart to withdraw but he ordered Wheeler's to retain new counsel within ten days because as a corporation, Wheeler's could not defend itself without counsel.  Ex. T.  Wheeler's, however, failed to retain new counsel.

24.  Thereafter, the matter went to trial on damages only, without Wheeler's present, and without a court reporter.  Ex. U.

25.  The jury returned a verdict against Wheeler's in the amount of approximately $1.4 million.  Ex. V.

26.  This declaratory action followed.  McTigue was realigned as a party plaintiff because he is a party in interest given the judgment in his favor against Wheeler's.  *See* DE 64.

## STANDARD OF REVIEW

Summary judgment is proper if the record evinces that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). A fact is material if it is one that might affect the outcome of the case. *See id.* When a court considers whether or not to enter summary judgment, it views all of the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir. 1993). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *State Farm Mut. Auto. Ins. Co. v. Duckworth,* – F.3d –, 2011 WL 3505267, 14 (11th Cir. Aug. 11, 2011) quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion,

9

shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324; *see also* Fed. R. Civ. P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." *Id*. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*.  Because the duty of an insurer rests upon the legal effect of the provisions of an insurance contract, the interpretation of the contract is a matter of law for the Court to determine, and is therefore appropriate for summary judgment. *See, e.g., Royal Ins. Co. of Am. v. Whitaker Contracting Corp.* 242 F.3d 1035, 1040 (11th Cir. 2001); *National Union Fire Ins. Co. of Pittsburgh v. Brown,* 787 F.Supp. 1424, 1427 (S.D. Fla. 1991).

<u>DISCUSSION</u>

The Court addresses first the argument raised by Markel which would be dispositive of the entire case: whether Markel had no duty to defend Wheeler's in the underlying action because Wheeler's did not provide timely notice to Markel of those claims, as required by the terms of the Policy.  Markel was made aware of the underlying suit on January 13, 2010, *two days after the discovery cut-off date, and 18*

*months after the lawsuit had been filed.  The trial, having been reset once already, was scheduled to begin in two weeks, on or about February 1, 2010, with calendar call set for January 21, 2010.*

When Markel learned of the McTigue lawsuit on January 13, 2010, Markel denied the claim by letter on January 19, 2010.  Wheeler's attorney, John Whittles, attempted to continue the trial, citing the recent discovery of insurance, but the motion was denied at a hearing on or about January 13, 2010.  Mr. Whittles was then permitted to withdraw from the case.  New counsel was engaged, but after mediation, that firm also withdrew from the case.  Upon the withdrawal of Wheeler's defense counsel on the eve of trial, Wheeler's failed to retain another lawyer despite understanding that a corporation cannot represent itself.  Georgedakis Depo. at 45.

On March 12, 2010, an uncontested default on liability was entered against Wheeler's and a trial only on the issue of damages was held, entirely without defense counsel present.  All of these events occurred less than 60 days after Markel was placed on notice of the case.  From Markel's perspective, it was asked to indemnify a claim on the eve of trial that had been actively litigated for 18 months when it had no opportunity to investigate the claim, reasonably participate in its defense, and after all meaningful pretrial deadlines has passed.

Under Florida law, a failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.  *See Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla. Dist. Ct. App. 1981) ("*Ideal*

*Mut.*") ("[n]otice is necessary when there has been an occurrence that should lead a reasonably prudent man to believe that a claim for damages would arise").  Indeed, Florida law provides that the failure to give timely notice creates a rebuttable presumption of prejudice to the insurer.  "If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced."  *Bankers Ins. Co. v. Macias*, 475 So.2d 1216, 1217-18 (Fla. 1985) ("*Marcias*").

In order to prevail on a late notice defense, "a party must therefore show that there are no genuine issues of material fact regarding (1) what the policy required with respect to notice, (2) when notice was provided, within the meaning of the policy and Florida law, (3) whether notice was timely, and (4) whether prejudice exists, either by operation of the unrebutted presumption or otherwise."  *Id.*  Clearly, the burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts."  *Macias*, 475 So.2d at 1218; *Stark v. State Farm Florida Ins. Co.*,  – So.3d --, 2012 WL 2327789, *2-3 (Fla. Dist. Ct. App. June 20, 2012).  The "determinations of (i) whether the notice provision was complied with and (ii) what is a reasonable time under the surrounding circumstances are questions of fact."  *Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co.*, 2009 WL 1513400, at *6 (M.D. Fla. 2009) (citing *Ideal Mut.*, 400 So.2d at 785).

In this case, it is undisputed that the policy required notice of a potential claim as soon as practicable, and notice was provided two years after the occurrence

12

and 18 months after suit was filed.  No reasonable interpretation of the record evidence supports a finding that notice was timely.  No fact justifies a delay from June 18, 2008, when McTigue filed the underlying suit,[2] until January 13, 2010, when notice was finally given to Markel.[3]  The term "as soon as practicable" means notice must be given with reasonable dispatch and within reasonable time in view of all the facts and circumstances of the particular case.  *Laster v. U.S. Fidelity & Guar. Co.*, 293 So.2d 83, 86-87 (Fla. Dist. Ct. App. 1974) ("*Laster*"); 31A Fla. Jur. 2d Insurance § 3156 (2012).  Based on the present record, as a matter of law, notice to Markel was not timely under the policy.  No reasonable trier of fact could conclude otherwise. Hence, in this case, a presumption of prejudice is established.

Markel could have and should have been informed at least 18 months before it, in fact, received notice of the claim.  An insurer suffers prejudice when it is denied the "opportunity to eliminate or reduce its loss," *Ideal Mut. Ins. Co.*, 400 So.2d at 786; or "better investigate and assess its rights and liabilities," *Laster*, 293 So.2d at 86-87.  By learning of the underlying suit 18 months after it was filed on the eve of

---

[2]  This is the latest conceivable date from which to start considering that notice should have been given to Markel.  The Policy requires Wheeler's to give notice as soon as practicable of any occurrence or offense which may result in a claim.  The actual injury happened on July 23, 2007, and McTigue's Petition for Workers' Compensation Benefits was filed on or about January 21, 2008.

[3]  Evidence in this case shows that Wheeler's owner was in possession of all of the information necessary to identify the applicable Markel policy almost immediately after the underlying action was filed, as he or someone from his company, "All My Sons," sent this information to his current insurance broker.  Georgedakis Depo. at 30-31.

trial, after the close of discovery with no witness or exhibit lists having been submitted and after Wheeler's motion for a continuance was denied, Markel had no meaningful way to participate in Wheeler's defense.

"[W]hile prejudice to the insurer is presumed in delayed notice cases, it can be rebutted by showing that no prejudice has resulted to the insurer." *Hartford Acc. & Indem. Co. v. Phelps*, 294 So.2d 362, 365 (Fla. Dist. Ct. App. 1974).[4]  Thus, although "a presumption of prejudice follows a finding of unreasonable notice, that presumption may be overcome by competent evidence" demonstrating otherwise. *Gonzalez v. U.S. Fid. & Guar. Co.*, 441 So.2d 681, 681 (Fla. Dist. Ct. App. 1983). Therefore, Wheeler's burden is to raise a genuine issue of material fact on the presumed prejudice Markel suffered as a result of the untimely notice.  *See Florida Mun. Liab. Self Insurers Program v. Mead Reinsur. Corp.*, 796 F.Supp. 509, 513 (S.D. Fla. 1992); *Allstate Fire & Cas. Ins. Co. v. Duong Thanh Ho*, No. 11-60724, 2012 WL 442980, *8 (S.D. Fla. Feb. 10, 2012).

Wheeler's attempts to do so through the affidavits of two experts that opine that Markel was not prejudiced due to the delay.  Indeed, the experts assert that Markel breached its fiduciary obligation to Wheeler's by not conducting any investigation into whether it was actually prejudiced by the late notice.  Gregory

---

[4]  However, "[p]rejudice is more readily apparent in a case involving tort law where [the] inability of the insurer to promptly discover and interview potential witnesses or keep track of a party's injuries or losses might more clearly prejudice [the] defense of [a] later action." *Id*.

14

Coleman opines that the issue of prejudice and late notice is a "secondary" and "misguided" issue because once notified, Markel expressly denied coverage and a defense to Wheeler's.  DE 148-1 ¶ 7, DE 119-17, Ex. P.  Mr. Coleman further states:

> It is irrelevant for purposes of my opinions what occurred between the date of the incident and the date of notice to Markel, because the position taken by Markel in the underlying case was simple.  Markel stated that based upon the auto exclusion, there was no coverage and therefore, no duty to defend.  Markel further declared that due to late notice, it was prejudiced in its ability to defend against the McTigue claim.  It did not undertake any investigation, analysis or examination to determine whether there was actual prejudice to Markel.  The Markel adjuster, Leslie Gray, simply stated that so much time had passed, prejudice was in effect presumed.  This is clearly not the appropriate standard in the state of Florida.

Coleman Aff. ¶ 10 (DE 148-1).  Coleman's opinion improperly seeks to impose the burden of coming forward with evidence regarding the lack of prejudice on Markel.[5]

As previously noted, based upon the undisputed facts of this case, prejudice to Markel is presumed.  Wheeler's cannot raise a genuine issue of material fact on the question of prejudice by attempting to point to alleged breaches of duty on the part of Markel, such as failing to investigate whether it suffered actual prejudice and failing to file a declaratory judgment action on the question of the "auto" exclusion. A failure by Markel to investigate or seek declaratory relief does not negate the presumed  prejudice it suffered by Wheeler's late notice.  Coleman's additional

---

[5]   It also ignores the first part of Markel's letter denying coverage which states: "First, you need be advised that your failure to immediately report this matter to the Company at the time it occurred or at the time suit was filed is a serious violation of the conditions of your policy."  Ex. P.

opinions that Markel could have assigned counsel to defend the case at the eleventh

hour, and that the late appointed counsel would have had sufficient time to prepare

for trial and adequately defend the case are conclusory, speculative and rejected as

competent evidence to defeat summary judgment in this case.

Susan Kaufman, Wheeler's other expert, essentially mirrors Coleman's

opinions.  Kaufman also opines that Markel breached its duty to Wheeler's by failing

to obtain a legal opinion regarding the "auto" exclusion, by failing to defend the case

under a reservation of rights, by failing to file a declaratory relief action and seeking

a stay of the underlying case, and by failing to determine whether it was actually

prejudiced by the late notice.  As was the case with Coleman's opinion, none of these

asserted failures on the part of Markel address or raise a genuine issue of material

fact on the presumed prejudice Markel suffered.  Rather, these opinions merely

address the manner in which Markel handled the McTigue claim once they were given

the late notice.

At the time Markel was given notice of the underlying action, over two years

had passed since the incident, litigation had been ongoing for 18 months, and trial

was scheduled for the docket period beginning less than one month later.  The trial

court was aware of the recent discovery of additional insurance, yet the

supplemented motion to continue was denied.  As previously indicated, the facts of

this case demonstrate, as a matter of law, a presumption of prejudice.  *See City

Management Group Corp. v. American Reliance Ins. Co.*, 528 So.2d 1299, 1300 (Fla.

Dist. Ct. App. 1988) (summary judgment for insurer upheld where policyholder was two years late in notifying insurer of occurrence); *Leeds v. First Mercury Ins. Co.*, No. 10-22729, 2011 WL 2971228, *5 (S.D. Fla. July 20, 2011) (finding six month delay unreasonable as a matter of law).  Wheeler's must present competent evidence to create a genuine issue of material fact on the question of prejudice.  The argument that a stay would have been granted had Markel filed a motion is speculative and does not raise a question of fact on the presumption of prejudice.

Finally, Wheeler's attempts to rebut the presumption of prejudice by inaccurately stating that "[w]here an insurer possesses enough information to permit it to deny the claim on other grounds, Florida courts have consistently held that an insurer **waives** the right to reject coverage on the basis that the insured failed to provide timely notice of the claim." DE 125 at 9 (emphasis in original).  The Court rejects this broad statement as an accurate reflection of Florida law.  Following this line of reasoning, Wheeler's maintains that because Markel denied the claim on the additional ground that the claim was barred by the automobile exclusion,[6] Markel waived the right to reject coverage on the basis that Wheeler's failed to provide

---

[6]  Markel's January 19, 2010 letter to Wheeler's denying coverage cites first, the late notice, and second, the policy exclusion for any claim which arises out of an insured owned automobile.  Ex. P. In light of this Court's prior Order finding that McTigue's injury did not result from the use of an automobile, Markel has not asserted the applicability of the auto exclusion in its answer to Wheeler's Amended Complaint or in its Motion for Summary Judgment.  DE 152 at 4.

timely notice of the claim.  Under this theory, no insurer would ever be able to assert late notice as a defense unless it was the sole basis of a denial of coverage.

It appears this proposition is an expansion of a ruling which held that because an insurer was able to investigate a claim sufficiently to permit it to deny a claim on a ground other than late notice, the presumption of prejudice arising from the late notice was effectively rebutted.  *See Keenan Hopkins Schmidt and Stowell Contractors, Inc. v. Continental Cas. Co.*, 653 F. Supp. 2d 1255, 1263 (M.D. Fla. 2009) ("the record reflects that Continental denied coverage-some ten months after receiving notice of the claim-premised not upon the late notice or any resulting detrimental effect on its ability to investigate the claim, but upon Continental's interpretation and application of the terms of the contract itself").  The facts in *Keenan* and in the instant case, however, are radically different.  In *Keenan*, the insurer had ten months notice and was able to investigate the claim, whereas in this case, Markel effectively had no notice and no ability to conduct discovery.  Wheeler's asserts that Markel had an opportunity to investigate potential coverage defenses prior to the entry of judgment and had sufficient information to deny coverage on other grounds other than the late notice defense.  These assertions are rejected.

Wheeler's also cites *Nu-Air Mfg. Co. v. Frank B. Hall & Co. of New York*, 822 F.2d 987, 993 (11th Cir. 1987).  In *Nu-Air. Mfg.*, the insurer unconditionally denied that coverage was ever in force.  Under those facts, the court held that "[w]here an

18

insurer unconditionally denies liability, it waives all policy provisions governing notification of loss, proof of loss, and payment of premium." This case also is of no help to Wheeler's because Markel did not unconditionally deny that coverage was ever in force.  The Court rejects Wheeler's argument that because Markel cited the auto exclusion, in addition to late notice, as a reason for denying coverage, Markel waived the defense of late notice.

Having concluded that as a matter of law Markel was not obligated to defend Wheeler's at the McTigue trial, all other ancillary arguments are rendered moot. Therefore, in accordance with the conclusions made herein, it is hereby

**ORDERED AND ADJUDGED** Defendant Markel Insurance Company's Motion for Summary Judgment [DE 119] is GRANTED, Plaintiff Wheeler's Moving & Storage, Inc.'s Motion for Summary Judgment [DE 125] is DENIED, and Defendant, Markel Insurance Company's Motion for Pre-Trial Conference or, in the Alternative, Motion to Continue Trial [DE 160] is denied as moot.  In accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 4th day of September, 2012.

_____
KENNETH A. MARRA
United States District Judge

19